VANGUARD ID v. KAPPOS. Mr. Rosen. Good morning. May it please the court. The examiner here articulated a well-supported prima facie case of obviousness without resorting to hindsight. The patentee offered no evidence to rebut the prima facie case. Because you're arguing against the board decision, not just the examiner. And the board erred in reversing the rejection of a claim to the ornamental appearance of a generic rectangular transaction card with a circular key ring aperture. The primary prior art references that the examiner relied upon, Keller and Drexler, were generic rectangular magnetic stripe data cards, identical to the claim design except for the circular key ring hole. And the key ring hole was taught in numerous closely related prior art data cards. Those two primary references didn't have the circular hole in them, did they? I'm sorry, Your Honor? Those two primary references did not have the circular hole in them. That's correct. That's correct. But we believe you're right. Isn't the circular hole an integral part of the design? Well, all that the board said in support of that conclusion. Well, but I'm looking here, for example, at the patent. And in the description of it, they describe the general claim is just a typical thing. This is page 827 of the appendix. The ornamental design for a data card as shown and described. And then in the description, there's a description of 17 different figures. Four of those figures, 6, 9, 12, and 15, state that each of those describes a perspective view of an alternative embodiment of a data card showing my new design. And the only difference between the four of them is that the hole is placed in a different place in the card. Well, if those are variations of his new design, it seems to me it's a fair inference from that that his design included the hole. We don't dispute that the design includes the hole. The issue here is, was the hole so crucial to the overall visual impression created by the claim design that a primary reference, which was otherwise identical to it, could not be used in the basis for creating the prima facie case? So I don't dispute that the hole is a part of it. I think the variations. That's one way. That's how you state it. But it could also be stated that on the first page of the patent, what we have is a card showing the hole in the lower right corner. And that the question is whether the lack of a hole in the primary references meant that they did not create the same impression as this design with the hole in it. That's absolutely the question, Your Honor. So suppose the card, the difference in the primary references was that the corners were 90 degrees rather than curved. I tell you, that's one of the four elements, basically, of this card. One, that it's rectangular. Two, that it's got rounded corners rather than square corners. Three, that it's got this stripe across it. And four, that it's got a hole in it. Those seem to be the four elements of the design.  dealing with a matter of aesthetics here, of design, all four elements make up the design. Well, Your Honor, and here exactly, I think, is where the board went wrong. Your Honor has identified the shape of the card, the rounded corners, the aperture, and the stripe. What the board said in support of their conclusion was that we only find two ornamental features on the surface of the card, the hole and the stripe. Take one of those away, that seems awfully significant. The board made no mention, and the director in the brief here makes no mention of the rectangular shape of the card and the rounded corners, which are found in the primary references. And Your Honor, I would direct you to what we call the Gestalt test on page 20 of the blue brief, where we've reprinted, not hypothetical, some actual other designs which have been patented by Bank of America for this same basic article of manufacture. They all have the stripe. They all have the hole. But they're all of a different shape. And I respectfully suggest, Your Honor. The hole is of a different shape. I'm sorry? It's the hole that is of a different shape. No, the holes are all circular. The card itself is of a dramatically different shape. That's on, we have a little lineup on page 20 of the blue brief. You have a triangular and a T-shaped. Suppose what you had was the prior reference was the same as this card, except that the hole, instead of being a circle, is a triangle. Would that be the same basic design? I think that would be a different issue, Your Honor. I think what we have here is they took exactly. It might be a different issue. But my question to you is, would you say that was the same design? I think it could serve as a primary reference. If it had the magnetic stripe, the rectangular shape, the rounded corners, and a triangular aperture, that could serve as a primary reference that could be combined with secondary references showing a circular aperture. Mr. Rosen, you're opposing the patent office here. Usually, those opposed to the patent office are arguing patentability. You're arguing unpatentability, because as I understand it, they found patentability. And they did so on the basis of their reasoning on page 7 of their opinion, that the presence of the aperture is critical, and the primary reference must include an aperture. That sounds like they're saying there can be no obviousness here. If the primary reference had everything in it, there would be anticipation. Why couldn't? Seems to me you should be arguing that there's a primary reference which shows the cut with a magnetic strip. And we're talking about designs here. And there are other references. I'm particularly looking at the Ring of Connect. I don't know if you've pronounced it OK. Which shows a similar cut with a hole. And they're quite similar looking. It doesn't have the magnetic strip. And in terms of visual appearance on mental design, they're obvious, aren't they? I agree, Your Honor. And in fact, we believe any of these references rely on incorrect reasoning in their opinion, saying they all have to be in one reference. I think, of course, they are arguing that that's not what they say. That some are. Did not read it correctly? I don't know what that reference could have been based on their reasoning. I think, Your Honor, whether this court treats that as an issue of law akin to claim construction, which is what we think it is, or whether the court treats it as an issue of fact akin to determining what the prior art teaches, which is what the director has been arguing, either way it's reversible error. And we, in fact, in our original request, Your Honor, argue that the Werther references were primary. And I would stand here today, Your Honor, and say that any of these references could have been primary. Why do you need a primary if you had an A and a B and they're of the same nature? What difference does it make whether one is primary and one is secondary? If it's reasonable to combine them, then there can be a holding of obviousness. Well, Your Honor, I think I agree with the thrust of your question. I think what happened here, and this is somewhat analogous to the teaching suggestion motivation test and the role that it plays in obviousness analysis. And I think it's a situation somewhat like what we had six or seven years ago, where the test, something that has been designed as a useful tool against hindsight, has become treated as if it's an independent requirement for going forward. And I think on a fundamental level, that's actually where the board made its error. This is really just a backstop against hindsight. It's very difficult. And I think one of the central insights of the Egyptian goddess-type case and the cases that preceded it was that it is very hard to tell whether two things are very alike or very disalike in a vacuum. And that's why, in the infringement context, the court brings into play knowledge of the prior art. So you have a frame of reference. And I think that's a mistake that the board made here, was that they tried to determine whether it was a primary reference created the same visual impression in a vacuum. Unless the panel has other questions for me, I would like to reserve my time for rebuttal. OK. Thank you, Mr. Wilson. Thank you. Ms. Kelly. Thank you, Your Honor. Good morning. We please the court. Vanguard came to the USPTO with a rejection and requested re-exam. The examiner gave them what they wanted. The examiner adopted that rejection. The board disagreed with both Vanguard and the examiner and found that the aperture was integral to the claim design. And based on that finding, concluded that Keller and Drexel were not primary references. Vanguard now complains. Well, what's the difference? Primary or secondary? Reference is a reference. And if they're both related, each one's a card, and one has the strip, one has the hole, then I guess there are fact questions about whether the ornamental design incorporating these two would have been obvious. Why should it depend on designating one primary and one not primary? Well, the doctrine that you're referring to is this concept of a Rosen reference, which Rosen actually. I assume it's a different Rosen. Pardon? I assume it's a different Rosen. Yes, yes. Rosen actually has its roots back in the Jennings case of 1960. And the language that's often cited and quoted from Rosen is actually from the Jennings case. So if it's 60 years of precedent of this court saying, look, we have a tool for assessing obviousness for utility patents, and we've tried to modify that to work in the design patent realm, we realize it's not necessarily the best tool. And design patents are especially susceptible to hindsight. So the court announced 60 years ago that we were going to have this primary reference concept to prevent that sort of hindsight. When you look at the Graham test, for example, secondary considerations are designed to prevent against hindsight. Well, several of the secondary considerations that are applicable in the utility patent world just aren't available in design. If you look at the Rosen case, the Rosen case noted that the designs were significantly different in concept. Well, when I look at the primary reference here with the strip and a similar card with a hole in it, we're talking about appearance. Those aren't significantly different in concepts. So I don't see why the Rosen case applies. Well, it's interesting that you use the word concept, because it- That's the word in Rosen. Right. Rosen says that rejection shouldn't be based on design concepts. They should be based on overall appearance. In fact, Rosen, in other cases, like the Harvey case, cautioned against this notion of design concepts, that that is something that's applicable to utility patent, where you could say, well, we have a fastener, and we can have many types of fasteners, that that really isn't applicable, that what an ordinary designer looks to is the overall appearance. And they may look to these fundamental characteristics that go and contribute to this overall appearance. So really, we have some things sitting on a spectrum. So if you look to a case like Rosen, or a case like Harvey, where you had a vase with an overlaid hexagonal shape on it, in those cases, the reference that was selected or asked to be regarded as a primary reference, you have lots of fundamental characteristics in the claim design. And you would have to do many modifications. You had something with lots of characteristics. You have to modify many of those characteristics, and they would be significant modifications. So in both of those cases, the court said, no, we don't have a primary reference. All you have to do is take primary reference here, drill a hole in it, which was what one of the secondary references had, and you've got the appearance. Well, I'd like to answer that question, if I might, in both the general sense and then in the specific sense. Turning to the general sense, the general concept of why Rosen works, and it has worked for, it goes back to Jenny, it's been working well for 60 years, is you have the spectrum. So if you have a case like the Carter case, where we're talking about a baby garment, and you have six or seven fundamental characteristics of the claim design, when you're looking and making that comparison to the prior art, if you change, slightly change one of seven, then that's okay, we can still have, we can still have a primary reference. But as we move along the spectrum over here, at least this is the way the board construed the claim design, and then compared to the prior art, is now we only have two features. So now we have fewer features, and you're talking about completely removing one of those features. And so, in that way, the board said, look, when we put all these cases on a spectrum, we're over here in a different world than the Rosen universe. We don't have lots of features. Can the board just look and say, well, if we're making this determination, we're just gonna consider those two features? There are other aspects of this card that the board didn't seem to treat it as your opponent said, the fact that the ends are curved, and that certainly distinguishes this piece of this calendar, which has these square corners. If this was rounded, it might seem quite different,  that the board accepted, is it? Well, Vanguard is correct when it states that the board really didn't talk about the planar surface and the rounded corners. I would say that the board didn't speak to that because all of the, most of the prior cards have that. The fact that it was a rectangular shape, that might be quite unlike the shape of this thing, which is, looks like a hexagon or pentagon. But the board can give whatever weight it wishes, I suppose, to these different factors, but if it doesn't consider all of the factors, doesn't that make its decision a little more dubious? Well, I would say no. I would say no, that it doesn't make, that it doesn't reflect poorly on the decision in that, that it wasn't an issue in this case, because the prior art of record is a rectangular card with rounded edges. So it really, it wasn't an issue, just like when clay construction is done in a court, you don't necessarily construe every term about which there isn't a dispute. Unfortunately, at the time that the board, when the board made its decision, the board, it was, what the board and courts were to do with construction of a design patent claim was very unclear. And as this court is well aware, when this court granted Sershi Harari to re-hear Egyptian Goddess Anbang, one of the things this court asked of the parties was to please brief about claim construction and design patents. Basically, your position, I take it, as under our law, when you deal with a design patent, you've gotta point to a primary reference that basically looks the same as the design under consideration? Yes. There's no rule of general patent in the utility patent law that being a primary reference, is there? No, your honor, there is no such rule. Is this just based on a couple of those statements in Rosen or is there some basis to there being a primary reference? As I said, Rosen goes back all the way to the CCAP's decision in Jennings. The language in Rosen is actually quoted from Jennings. And it's a concept that has been around for 60 years that we need special protections in the design patent world. Design patents are very susceptible to adjudicating bodies and others just to say, oh, well, you just take these two pieces and put them together. And Rosen is sort of a stopgap that says, no, a designer of such articles looks at the overall appearance. And while this court may, in this case, disagree with the way that the board applied Rosen or the way the board construed the claim here, Rosen still remains a valid and viable stopgap against hindsight in this unusual niche world. And this is an area where we could have some sort of clarification on the claim construction aspects of the design patent world. But the USPTO believes that where we may need clarification on claim construction in this world, that Rosen is good law. And Rosen serves its purpose and serves its purpose well. You wanted to share your time with Mr. McLaughlin or who? Yes. Do your honors have any further questions? We will ask your comment. Great, thank you, Judge Rosen. May it please the court, I would like to address a couple of the questions that the panel has brought up here. First, in discussing the board. The board's decision here should be affirmed because in part, one can have confidence because all of these issues were vigorously argued by Vanguard and so the board had the benefit of the kinds of issues that we're talking about today. That would mean we couldn't reverse in any case. Well, your honor. Most issues are well ventilated below. Yes, they are. If one looks at the issue your honor has raised, which is the validity of the primary reference test and the value of that test, if one looks at its history, you look at Jennings, which is in 1950. First articulation, the Patent Act, which generates the current iteration of 103 is in 1952. The Supreme Court holds in Graham that the Patent Act of 52 is in fact to adopt and affirm the current law on the stage, a congressional endorsement arguably of what is then law. Rosen then follows in 82 or so, then most pertinent here I think after KSR, the Federal Circuit decides Titan Tire and in each of those decisions, the court identifies the primary reference test as an essential element of analyzing these claims. Now, it may be in some other case, some alternative might have a value, but in this case, if that is going to be decided, I think it would have to be decided on bonk because one would have to reverse or call into question Rosen, Jennings, Durling, Titan Tire. Well, don't we need to look at the fact that this is a design patent, as Miss Kelly said, and that the rules for design patents have always been that you look at the overall impression, which very much takes one, I should think, two of your, if the references that you combine might very well be combined if you're looking at a utility patent, but we're still looking at the overall impression. So I've always viewed these rules as applying with particularity when one looks at designs. Yes, and this is also a very narrow patent. As your honor said, the board considered all of the elements, but it was only called upon to write about those that were objected to, but it is the overall impression and that, the Graham court said, is an issue of fact. If one looks at Graham and one considers how to evaluate the decision of the board in saying the overall visual impression, which is exactly what the board said, as your honor indicated, the overall visual of impression cannot be separated from the aperture, which as your honor said, could have been triangular or square and create a different impression. What Graham said is that under section 103, which is talking about patentability, which is one of the three conditions, it lends itself to several basic factual inquiries. The scope and content of the prior art are to be determined. Differences between the prior art and the claims at issue are to be ascertained. Mr. McLaughlin. Yes, your honor. I know what Graham's idea says. The fact is you have a limited number of references here. Yes, your honor. You have the main reference color, which has the card with the magnetic strip. You have another reference with a hole. Well, you can look at it the other way. You put the other reference with a hole, call that a primary reference, and then you've got the reference, the same type of card with a strip. I mean, that's as simple as can be. And so, we're really not debating Graham v. Deere or a 50-year-old law. Well, the relevance of that quote from Graham, your honor, is that it tells the- But that doesn't say, in its opinion, the board said, contrary to the examiner, that basically you have to have everything in one reference. The issue here for the board and why the board is right, your honor, and the examiner was wrong, is for the very reason that this is a simple and elegant design. What the board understood as a factual matter from Graham is when one looks at the overall visual appearance of a simple and elegant design, the individual elements are essential, and they cannot be removed without the loss of the basic visual appearance. In other words, there can only be anticipation, not obviousness. No, your honor, because, for example- No, your honor, because if, for example, it were a triangular hole or a square or different proportions, where all of the various features might be somewhat different, one could have a primary reference that had a somewhat different visual appearance, but still have- That was not the best answer. There are no triangles. Yes, your honor. Thank you. Okay, thank you, Mr. McClatchy. Mr. Rosen, you have a few minutes. I have to disagree with Mr. McLaughlin's statement that the board considered all of the elements that Judge Friedman enumerated. I think the board here was quite clear. They considered the features they found on the surface, the planar surface of the card. There's no indication that they considered the shape of the card or the rounded corners. Well, you don't know, because the cited references show cards of the same shape. So perhaps, for example, and with rounded corners, for example, so that wasn't in dispute. So how do we know what they considered or not? Well, the prior references also showed magnetic stripes, and they specifically mentioned that. They're a different kind of stripe, and this design is quite specific to the placement of the stripe. I gather it isn't an issue as far as the design patent aspect is concerned. I imagine it would be an issue in infringement because the prior art shows a card, a bank card, that if you look at it, it's exactly the same, except the stripe is diagonal. So in terms of the differences, they were small, but this is a crowded field, and here is a specific design. And it's not, again, it's not a matter of infringement. We don't have to say how narrowly it's construed. Obviously, it can't include a horizontal stripe, a horizontal magnetic stripe because, or rather, yeah, a diagonal stripe, rather, because that's in the prior art. So, and this is really where I do have difficulty because it does seem, with the design patent, where the traditional classical rules are the overall appearance, and everything contributes to the appearance, but I gather the concern of the requester for reexamination was not to provide a card that differed in the way some of the prior art differed, but to provide the identical card. And I think it's in the context of the specificity of the design that the office and the board overruled the examiner, because it did have a highly specific design before. If I may answer in two ways. First of all, Your Honor, factually, I do think the identical magnetic stripe appears in three or four of these references. The two primaries. The horizontal stripes without the hole, and there are the diagonal stripes with the hole, and you can find all of the elements quite specifically in the prior art. And now we have this narrow design, which is different. And the question is, does the design patent law accommodate that sort of difference? Your Honor, the design here is found, the question was, what was the inference to be drawn from the fact that they mentioned the magnetic stripe and the hole, but didn't mention the rectangular shape? Now, I argue that the inference to be drawn from that is that they didn't consider the shape. And what this court has said is that in determining the overall visual impression, that it is important, first of all, obviously, both the shape and the surface ornamental features matter. What this court has said- All the prior art is the same shape. They're rectangular, they're rounded edges. So why would they have argued about it? Some are only generally rectangular, some are more oblong than others, but the point- Your Honor, I think some of the proportions are, to my eye, hard to distinguish. But the more fundamental point I wanted to make in response to you, Your Honor, was that this court has said that in determining overall visual impression, it's something that starts out somewhat instinctual, but then the decision maker has to articulate the basis for it. Here, the board, in articulating the basis, ignored what I think our diagram on page 20 of the brief shows was a very fundamental and dominant factor in creating the overall visual impression. Now, there's been mention of the Rosen case and the Harvey case. What they warn against is looking at just general design concepts. What I submit to Your Honor is that a rectangular magnetic stripe data card and a rectangular magnetic stripe data card with a key ring hole share much more than a general design concept. They have the same basic design characteristics and, therefore, can be the basis for a prima facie case of offices. Thank you very much. Okay, thank you. Thank you all. Mr. Rose, Ms. Kelly, Mr. McLaughlin, the case is taken into submission.